FERMÍN RIERA ET AL., Petitioners, *v.* SUPERIOR COURT OF PUERTO RICO, SAN JUAN PART, RAMÓN CANCIO, JUDGE, Respondent; THE ADMINISTRATOR OF THE ECONOMIC STABILIZATION OF PUERTO RICO, Intervener.

No. 2163.   Argued June 11, 1955.—Decided September 5, 1956.

*Luis A. Catoni Antonetti* and *Rubén Gaztambide Arrillaga* for petitioners. *Juan T. Peñagarícano, Carlos Coll Carpintero* and *José T. Marrero Rivera* for intervener.

MR. JUSTICE SALDAÑA delivered the opinion of the Court.

The question raised in this proceeding is whether the Reasonable Rents Act (17 L.P.R.A. § 181 *et seq.*) is applicable to the lease of a vacant urban lot which the lessee uses exclusively for the parking and sale of automobiles and in which no *"premises or building"* is located. We believe that the trial court erred in holding that the lease contract is comprised within the special norms established by that law.

At the end of 1950 and early part of 1951, the Mayagüez Motor Corporation leased two adjacent lots in the city of Mayagüez, one belonging to the Riera brothers and the other to the Carlo brothers. Both were vacant lots with an area of 721.60 square meters each. It was agreed in the lease contracts (1) that the monthly rental would be $90; (2) that the lessee would fence the lot with iron poles and wire; and (3) that at the expiration of the lease contract the fence and all other improvements "would remain the property of the lessor without any obligation to pay compensation therefor." The lessee built the fence enclosing the two lots, and erected on the lot of the Riera brothers a small open frame shed, zinc-roofed. At the end of 1952 the Economic Stabilization Administrator, at the lessee's request, readjusted the rentals of the lots reducing them from $90 to $45.75. Subsequently, on September 11, 1953, two "administrative orders of decontrol" were entered: decreeing that the properties object of the lease contracts did not come under the provisions of § 4 of the Reasonable Rents Act and declaring the former orders void.

The decontrol orders were based on the following findings of fact made by the presiding officer at the hearing on the basis of the evidence introduced by the parties in the course of an administrative hearing:

"1. There is no building or premises of any kind on the Carlo lot but it is partially surrounded by a cyclone fence with electric light poles built by the tenant. The lot has been filled with gravel. The tenant, a corporation engaged in the sale of

automobiles, devotes it to the parking of new and used vehicles. This lot is adjacent to the Riera lot. Both adjacent lots are used by the tenant jointly, that is, they constitute a single parcel or unit devoted to the same use or purpose.

2. There is a small kiosk or open shed on the Riera lot which was built by the tenant. Inside there is a canvas and wooden chair, a small table, and a battery charger. There is no desk, material, or office equipment. The lot has the same fence enclosing the Carlo lot.

3. The tenant's office is located in a building which is not adjacent to, but near these lots, on the opposite block. The tenant leased both lots because of their proximity to the business.

4. The roof of the kiosk protects from the rain the persons who are momentarily in the lots. Likewise, the chair in the kiosk might incidentally make the work of the salesmen who accompany the prospective clients while they examine the automobiles in the lot more convenient in case where an agreement is reached on the spot, and it is necessary to fill out preliminary vouchers for the sale of the automobile. (No transaction effected would be binding on the tenant until the General Manager approves it.)

5. The kiosk is not essential for the operation of the tenant's business; it is not a commercial premise; it is not an office; as a general rule or habitually there is no employee or agent of the tenant inside; it is at most an accessory to the use of the lot."

After hearing the parties on a motion for reconsideration, the Administrator finally entered an order on November 16, 1953, which reads as follows:

"On September 11, 1953, this Administration entered Orders decreeing the decontrol of the lots owned by the Heirs of Carlo and Eduardo and Fermín Riera, located at the Santiago Veve Boulevard of Mayagüez, Puerto Rico, occupied by Mayagüez Motors Corporation. Such determination was made as to the Riera Brothers' lot because the Administration believes that the shed located in such lot is not a building or premises for commercial or industrial purposes. As to the lot of the Heirs of Carlo, it was determined that in this lot there is no building or premises belonging to the tenant or person other than the owner of the lot.

"The tenant, Mayagüez Motors Corporation, moved for reconsideration of the Orders of September 11, 1953. The motion for reconsideration is dated September 21, 1953.

"To hear the parties on the Motion for Reconsideration, a public hearing was held on October 28, 1953. . . . The argument in this case hinged on whether the building in the Riera brothers' lot constitutes a structure for the purpose of determining whether or not that lot falls under the definition of § 1, par. (b) 10 of the Rent Regulation for Commercial Premises. Counsel for the owners also argued that, assuming that it were determined that the shed in the Riera brothers' lot constitutes a structure, it would then follow that one of the lots would be covered by the Reasonable Rents Act, but not the other. To this allegation we answer that since the two lots have been turned into a single rental unit, whatever determination is made as to one covers the other. The fence between the two lots was eliminated and both lots were fenced by a cyclone wire with a cement base. It was all done with the owners' consent. This fence encloses both lots as a single unit with a gate for the entrance and exit of the vehicles parked in the lots. (See the testimony of Mr. Fermín Riera at the hearing of May 12, 1953.)

"The Administrator, after thoroughly considering the evidence introduced in this case, under the authority vested in him by Act No. 464 of April 25, 1946, and Act No. 97 of June 19, 1953, hereby revokes his orders of September 11, 1953, decreeing the decontrol of the lots owned by the Heirs of Carlo and the Riera brothers, occupied by the Mayagüez Motors Corporation. The maximum rent for each lot will be $45.75 per month pursuant to the Orders of December 27, 1952."

██ The provisions of the Reasonable Rents Act apply to the following classes of "rental property" under the express provisions of § 4 (17 L.P.R.A. § 184):

"(a) Buildings and premises for business, offices and consulting professional offices, offices for commercial and industrial purposes, and lots whereon such premises and buildings are located if such premises and buildings belong to different owners;

"(b) Houses, apartments, and groups of houses used for dwellings;

"(c) Lots whereon houses belonging to other persons are located;

"(*d*) Houses and buildings leased to the Government of Puerto Rico, its agencies and instrumentalities, to public corporations, to the Government of the Capital, and to the municipal governments of Puerto Rico."

The definition of "rental property" includes in its terms ". . . house, room, apartment, and group of houses used for dwellings, and any part thereof; lot on which one or more houses belonging to persons other than the owner of the lot are located, and house and building used wholly or partly for business, professional offices, or commercial or industrial purposes." (17 L.P.R.A. § 212.) Besides, § 1(*b*) (10) of the Rent Regulation for Commercial Premises defines the term *"commercial premises"* as "every structure or part of a structure leased for commercial, business or industrial purposes . . . as well as lots where structures devoted to such purposes and belonging to other than the owner of the lot, are located."

Apparently, the final decision of the Administrator in the case at bar is based on the fact that the small shed erected on the Riera lot constitutes a *"premises or building"* for business and that the wire fence made both lots "a single rental unit" to which the law applies because that shed is located in one of the lots. The Superior Court, however, decided the jurisdictional question on an entirely different basis, to wit, that the Reasonable Rents Act applies to a lot leased for commercial purpose even if it has no building or premises.[1]

Both the opinion of the Administrator and the opinion of the Superior Court are erroneous. The concept "lot" as object of the lease contract is clearly distinguished from that

---

[1] It stated in its opinion that ". . . in our opinion the Act is applicable to a lot leased for commercial purposes even if there is no structure on the lot. . . . In the instant case we decide that in view of the attendant circumstances—to wit, that it is an accepted and uncontroverted fact that the petitioners leased their respective lots to the Mayagüez Motors Corporation and that the latter devotes them to its automobile sale business—it was not necessary for the Administrator to expressly conclude that there is a 'commercial premises' on the two lots."

of a building or premises used for dwelling or business. We have already held that the Reasonable Rents Act is not applicable to the lease of a rural property. *Igartúa* v. *Ruiz*, 73 P.R.R. 339 (1952). It is also obvious that a lot without any building or premises is not subject to the Reasonable Rents Act, even if it stands in the urban zone and is devoted to industrial and commercial purposes. The only lots subject to the Reasonable Rents Act are those whereon business *premises or buildings* are located if they belong to persons other than the owner of the lot, and those where there are *dwellings* belonging to other persons.[2] Even the Administrator in defining the terms "rental property" and "commercial premises" in his Regulation (§ 1) expressly excluded the lots whereon premises or buildings are not located.[3] And the definition of "business premises" which appears in § 22 of the Act also refers expressly to *premises or building* used for business, etc. In brief: it is obvious that the Reasonable Rents Act does not refer to lease contracts of vacant lots where no building or premises is located, even when the lots are used for commercial or industrial purposes.

■■ On the other hand, as a question of law, the construction of a fence and a small kiosk or shed on one of the lots object of the lease is not a premises or "building used for business" in the light of the facts in the present case. In the first place, the object of each of the lease contracts was a lot, without a building of any kind, to be devoted to the parking of automobiles offered for sale by the lessee. In

---

[2] See the Statement of Motives of the aforesaid act. (17 L.P.R.A. § 181). Also 17 L.P.R.A. §§ 184 and 212.

[3] That section was in force when this case was tried. But the lower court concluded, however, that the same might be vacated or amended quasijudicially, that is to say, in the specific case of the lots involved herein. In *Adm'r of Econ. Stab.* v. *Superior Court; Vélez, Int.*, 75 P.R.R. 419, 427 (1953), referring to that provision of the Regulation, we held that the same was valid and in conformance with the provisions of §§ 4 and 22 of the Act.

the second place, that shed does not turn the lots into "rental property" because (1) the "premises or building used for business" contemplated by the Reasonable Rents Act are structures or buildings which fundamentally are used for commercial or industrial purposes, and (2) the construction built by the lessee on one of the two lots is of a temporary nature, small, of slight value and is obviously used as an accessory to the business operated in the vacant lot.[4] That is to say, the lease contract in question did not contemplate any kind of building, but only two lots in whose area the lessee could park the automobiles which it had for sale, and particularly, bearing in mind the other circumstances previously pointed out, the fact that the lessee built there a shed does not render applicable to the lease contracts in question the provisions of the Reasonable Rents Act. *Cf. Orsini* v. *Sánchez*, 67 P.R.R. 809 (1947); *Adm'r of Econ. Stab.* v. *Superior Court; Vélez, Int.*, 75 P.R.R. 419 (1953); *Talbert* v. *Hilton Hotels*, 78 P.R.R. 271 (1955); *In re McGrath*, 58 N.Y.S. 2d 876 (1945); Friedlander and Curreri, *Rent Control* (1948) § 116; 28 *Jurisprudencia Civil* (2d s.) 335 (1949); 29 *Jurisprudencia Civil* (2d s.) 508 (1950).[5]

The judgment will be vacated and the case remanded to the lower court for further proceedings not inconsistent with this opinion.

---

[4] According to the evidence in the records, the shed in question is an open zinc-roofed frame shed, measuring ten feet wide by twelve feet long.

[5] It is advisable to repeat here what we stated in *La Costa* v. *District Court*, 67 P.R.R. 158, 160: "Perhaps such tenants should have the same protection as Act No. 464 affords others. But we cannot refuse to follow the plain language of the statute. The remedy, if any is needed, lies in the hands of the Legislature."